489 A.2d 868

**Roman MATUSZ, Appellee,**

v.

**SAFEGUARD MUTUAL INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 15, 1984.

Filed March 8, 1985.

James T. Moughan, Philadelphia, for appellant.

David E. Robbins, Broomall, for appellee.

Before CAVANAUGH, BECK and TAMILIA, JJ.

CAVANAUGH, Judge:

At issue is the question of whether the Pennsylvania Insurance Guaranty Association is liable for attorney's fees, costs and interest assessed against an insurance company which was later suspended from its business operations as the result of an order of the Pennsylvania Insurance Commissioner.

Appellee, Roman Matusz, sought personal injury protection benefits from Safeguard Mutual Insurance Company and received an award in arbitration for lost wages and medical expenses, as well as counsel fees and costs. Thereafter, on May 29, 1979, the Insurance Commissioner of Pennsylvania issued an order which suspended the business operations of Safeguard, and at the same time sought an order directing him to liquidate the company. This was contested and it was not until April 21, 1982 that the order declaring Safeguard insolvent was entered by the Common-

wealth Court. Safeguard thereby became an "insolvent insurer" under The Pennsylvania Insurance Guaranty Association Act, Act of November 25, 1970, 40 P.S. § 1701.-103(6). The Association (PIGA) thus assumed certain obligations with respect to claims against Safeguard. Thereafter, counsel for Matusz pursued his claim against PIGA. While PIGA agreed to pay the amount of medical expenses and wage losses, they refused to pay the amount awarded for attorney's fees and costs and also resisted the claim for interest at eighteen percent calculated from the period of thirty days after the due submission of supporting documentation for the work loss and medical expense claims. The trial court heard this dispute on a stipulated set of facts and awarded the counsel fees and expenses and interest to appellee. The present appeal is from this determination.

The claim for eighteen percent interest is made pursuant to the "overdue" provision of the No-fault Motor Vehicle Insurance Act of 1974, 40 P.S. § 1009.106(a)(2) and the attorney's fees and costs were awarded pursuant to § 1009.107 of the same Act. There is no present quarrel with the assessment of these ancillary awards as against Safeguard—the issue relates only to PIGA's responsibility.

■ There is nothing in the Pennsylvania Insurance Guaranty Association Act which explicitly bears upon the entitlement of the claimant to interest or attorney's fees and costs properly assessed under the No-fault Act. The purpose of the PIGA is stated, in part:

### § 1701.102 Purposes

The purposes of this act are:

(1) To provide a means for the payment of covered claims under certain property and casualty insurance policies, to avoid excessive delay in the payment of such claims, and to avoid financial loss to claimants or policyholders as a result of the insolvency of an insurer;

The scheme of PIGA is to assess insurers who write property and casualty insurance policies in Pennsylvania in order to create a fund which, under certain restrictions, is

to be made available "to make payment to the extent of covered claims of an insolvent insurer existing prior to the determination [of the insolvency of the insurer]...." 40 P.S. § 1701.201(b)(1)(i). In accordance with this obligation, PIGA shall:

(ii) Be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if that insurer had not become insolvent.

As noted, PIGA is obliged to make payment to the extent of "covered claims," which is, in turn, defined to include an unpaid claim "which arises under a property or casualty insurance policy of an insolvent insurer...." 40 P.S. § 1701.103(5)(a). PIGA concedes that under the above statutory scheme "it steps into the shoes" of the insolvent insurer but only to the extent of their obligations on "covered claims" and that a "covered claim" is only one which arises under the policy. It is argued that the attorney's fees arise not from the policy but from the provisions of the No-fault Act as a result of Safeguard's unreasonable denial of the claim.

Initially, we do not see *Greenfield v. P.I.G.A.*, 256 Pa.Super. 136, 389 A.2d 638 (1978) relied upon by PIGA as being of significant authority. *Greenfield* deals with attorney's fees for services *to the insolvent insurance company* while the present claim is for fees for services *to the claimant* against the insurer, which we have demonstrated has its basis in the No-fault Act and grows out of assertions of a rightful claim under the policy. The same argument, that is, that the obligation arises not under the policy, but by reason of the No-fault Act, is made with respect to interest payments, and appellant seeks to draw support from our decision in *Sands v. P.I.G.A.*, 283 Pa.Super. 217, 423 A.2d 1224 (1980). Although in *Sands* we did indeed state that PIGA is not the "legal successor" to the insolvent company and that it is required to pay only to the extent of covered claims, we simply held that it was obliged to pay on the verdict against the insolvent company only to the extent

of the insolvent's policy and that covered claims were defined to exclude any amount in excess of the applicable policy limits. Since the payment of interest would have exceeded this limit, it was disallowed. We therefore do not see *Sands* as controlling the present issue.

Referring to the statutory definition of a covered claim, we see that it is one "which arises under" [an insolvent insurer's policy]. The statutorily imposed attorney's fees, costs and interest can easily be said to "arise under" what was admittedly a validly asserted claim against Safeguard.

If we interpret the PIGA Act and No-fault Insurance Act as relating to the same class of persons—victims of accidental injuries, they would be construed *in pari materia* and the two statutes should be construed as one. 1 Pa.C.S.A. § 1932, Statutes in Pari Materia. Thus, provisions of the no-fault law for the payment of counsel fees, costs and interest can be read in concert with the PIGA provision which states as its purpose "To provide a means for payment of covered claims, ... and to avoid financial loss to claimants ... as a result of [insurer] insolvency," thus requiring that we allow for the payment of such additional benefits to the claimant. Moreover, one can assume that the insurer faced with insolvency is more likely to resist the payment of claims, thereby delaying the payment of the claims and often forcing the claimant to secure counsel to assert the claim. Under these circumstances, fees and interest clearly arise out of the claim and must be recouped in order to allow the claimant to "avoid financial loss" as a result of the insolvency. The law creating PIGA provides that the association shall be "deemed the insurer" and have "all rights, duties, and obligations of the insolvent insurer." To now deny appellee properly assessed attorney fees, costs and interest would, we think, improperly excuse PIGA from its full statutorily imposed duties and obligations.

Finally, any argument that the payment of interest is a penalty and thus should be strictly construed is refuted by *Hayes v. Erie Insurance Exchange*, 493 Pa. 150, 425 A.2d 419 (1981) where the Supreme Court stated "[w]hether the

18% interest is a 'penalty' (it is *not....*)" 493 Pa. at 154, 425 A.2d at 421.

■ We disagree, however, that PIGA should be responsible for the payment of interest during the pendency of the insolvency proceedings and after Safeguard's suspension. While it may fairly be said that PIGA should be deemed the insurer (Safeguard) to the extent of its obligation on the covered claims and, therefore, must bear the cost of the insurer's refusal to timely pay the claim, it would, on equitable principles, be unfair to fix upon PIGA interest for the period of the insolvency proceedings, a period during which neither Safeguard nor PIGA could pay the claim.

Affirmed in part and reversed in part. Remanded for the entry of judgment calculated in accordance with this Opinion. Jurisdiction relinquished.