## Schreffler v. Pennsylvania Insurance Guaranty Association

*W. Russell Carmichael,* for plaintiff.
*Hugh M. Emory,* for defendant.

KEELER, *J.,* January 12, 1990 — Defendant, Pennsylvania Insurance Guaranty Association, has filed preliminary objections in the nature of a demurrer to plaintiff's complaint. The basis for this preliminary objection is that the complaint fails to set forth a cognizable cause of action. The complaint enumerated three counts as bases for the recovery: bad-faith failure to settle a prior case, punitive damages, and strict liability for failure to settle prior litigation. The parties briefed their various positions with respect to the preliminary objections and counsel were afforded an opportunity to orally advocate their client's respective positions at a hearing held on October 19, 1989.

Before addressing the legal issues presented by the preliminary objections, a review of the history of the claim is in order. In 1982, the plaintiff filed a wrongful death and survival action against Richard and Jean Keenan, trading as Keenan's Tavern. Plaintiff's decedent was fatally injured in an automobile accident after he had been drinking at Keenan's Tavern.

Keenan's Tavern purchased premises liability insurance coverage and liquor liability insurance coverage from Amherst Insurance Company. This company became insolvent and the Schreffler claim

was subsequently handled by PIGA. In 1985, PIGA filed a declaratory-judgment action seeking a determination of the nature and extent of the insurance coverage available under the Amherst policy. This court determined that $75,000 of insurance coverage was available under the policy issued to Keenan's Tavern. In the previously filed wrongful death and survival action case, plaintiff's counsel made a demand for $75,000 in order to settle his client's claim. PIGA did not respond to this demand within the time parameters set by plaintiff's counsel. Thereafter, the Keenans, as individuals, stipulated to the entry of a judgment in the amount of $1,042,535 in favor of plaintiff. In addition, the Keenans assigned any rights that they might have to prosecute an action against PIGA for its bad-faith refusal to settle the claim asserted by plaintiff. Plaintiff filed this action directly against PIGA asserting PIGA's bad-faith refusal to settle the prior complaint for the $75,000 demand.

The Pennsylvania Insurance Guaranty Association is a creature of statutory creation. 40 P.S. §1701.101 et seq. It is designed to handle claims of insolvent insurers within the commonwealth. Funding for the insurance guaranty association derives from assessments made against insurers who write property and casualty insurance policies in Pennsylvania. The fund created thereby is made available "to make payment to the extent of covered claims of an insolvent insurer existing prior to the determination [of the insolvency of the insurer]. . .." 40 P.S. §1701.201(b)(1)(i). For purposes for determining PIGA's responsibilities, the statute specifically provides that it shall "be deemed the insurer the extent of its obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if that insurer

had not become insolvent." *Id.* at section 1701.201(b)(1)(ii). Critical to an evaluation of this case, then, is the definition of the term *covered claims* for PIGA's obligation extends to payment of such claims. *Covered claims* is defined in the statute to include an unpaid claim "which arises under a property or casualty insurance policy of an insolvent insurer. . .." *Id.* at §1701.103(5)(a).

This allows us to underscore the sole question presented for our determination. Does a claim for bad-faith refusal to settle an underlying claim fall within the purview of PIGA's responsibility? A simple review of the term *covered claim* suggests that PIGA's responsibility does not extend to bad-faith refusal to settle cases. The wrongful failure to settle a case does not "arise under" the terms of a property or casualty insurance policy. Rather, such a claim results from the actions of the entity handling the claim. It is therefore in the nature of a tort claim resulting from improper or wrongful adjustment of the claim. Clearly, it does not arise from the direct obligations of the insurance contract itself.

The court recognizes that prior case law allowed recovery for certain fees or costs which are not specifically within the terms of an insurance policy. *Matusz v. Safeguard Mutual Ins. Co.,* 340 Pa. Super. 116, 489 A.2d 868 (1985). Yet, the situation in *Matusz* is readily distinguishable from the case present. In *Matusz* the plaintiff sought payment of counsel fees, costs and interest from PIGA in the context of a no-fault claim. In reaching its decision to allow such compensation, the Superior Court noted that the insurance guaranty association enabling legislation must be read in pari materia with the No-fault Insurance Act. See 1 Pa.C.S. §1932. As such, the specific provisions of the no-fault law which explicitly provided payment of counsel fees,

costs and interest to a prevailing insured became, in effect, a portion of the covered claim under the terms of the policy issued by the now insolvent insurer.

No analogous statute exists which creates an entitlement to damages for bad-faith refusal to settle an insurance claim. Therefore, the *Matusz* case is inapposite.

Under these circumstances the court finds as a matter of law that plaintiff's claims against PIGA for bad-faith refusal to settle a claim are not cognizable under Pennsylvania law. Therefore, defendant's preliminary objections must be sustained and plaintiff's complaint dismissed.