**T & N PLC, Plaintiff,**

**v.**

**PENNSYLVANIA INSURANCE GUARANTY ASSOCIATION, Defendant.**

**Civ. A. No. 90–4946.**

United States District Court, E.D. Pennsylvania.

Aug. 24, 1992.

Philip L. Graham, Jr., Mark F. Rosenberg, Tariq Mundiya, New York City, Richard L. Berkman, Philadelphia, Pa., for plaintiff.

Joseph Hankins, Lise Luborsky, Philadelphia, Pa., for defendant.

OPINION AND ORDER

VAN ANTWERPEN, District Judge.

This is an action for statutory benefits under the Pennsylvania Insurance Guaranty Association Act, 40 P.S. § 1701.101 *et seq.* Plaintiff, T & N plc ("T & N") has filed a three count complaint against Defendant Pennsylvania Insurance Guaranty Association ("PIGA") which is an unincorporated association of insurers created by statute to provide insolvency insurance for its members. T & N seeks damages against PIGA for its alleged failure to assume the payment obligations of the now insolvent American Mutual Liability Insurance Company. Count I of the Complaint was based upon the terms of a settlement agreement, and Count II of the Complaint was based upon certain insurance policies. The settlement agreement resolved insurance coverage claims between American Mutual and T & N which arose under certain insurance policies which were issued by American Mutual to Keasbey and Mattison Company, T & N's now dissolved but one-time subsidiary. In addition, T & N seeks damages for PIGA's alleged bad faith handling of T & N's claims under 42 Pa.C.S. § 8371 in Count III of the Complaint.

On May 28, 1992, this Court partially granted T & N's motion for summary judgment on Count I of the Complaint and granted PIGA's motion for summary judgment on Count II of the Complaint. The Court found that the settlement agreement arose out of an insurance policy and that a separate action could not be maintained on the underlying insurance policies. The Court denied the parties' motions for summary judgement in all other respects with leave to renew when discovery was complete. Although, discovery is not yet fully complete, this court has reconsidered its prior ruling with respect to Count III of the Complaint and, by Order of July 9, 1992, granted PIGA leave to file an additional motion for summary judgment with respect to this Count.[1] This matter is presently before the Court on the PIGA's renewed motion for summary judgment on Count III of the Complaint. Jurisdiction is based upon diversity of citizenship 28 U.S.C. §§ 1332(a)(2) and 2201.

SUMMARY JUDGMENT STANDARD

The court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id.* at 248, 106 S.Ct. at 2510. All inferences must be drawn and all doubts resolved in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.1985), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985).

On motion for summary judgment, the moving party bears the initial burden of identifying for the court those portions of the record that it believes demonstrate the absence of material fact. *Celotex*

1. In our Memorandum and Order of May 28, 1992, we denied PIGA's motion for summary judgment on Count III pending further discovery. We stated no dispositive conclusion of law. Therefore, PIGA's current motion is not barred, as T & N suggests, under the law of the case doctrine.

*Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the movant and may not rest on mere denials. *Id.* at 321 n. 3, 106 S.Ct. at 2552 n. 3 (quoting Fed.R.Civ.P. 56(e)); *see First Nat'l Bank of Pennsylvania v. Lincoln Nat'l Life Ins. Co.,* 824 F.2d 277, 282 (3d Cir.1987). The non-moving party must demonstrate the existence of evidence that would support a jury finding in its favor. *See Anderson,* 477 U.S. at 248–49, 106 S.Ct. at 2510–11.

## FACTUAL BACKGROUND

Although we are uncertain whether or not T & N will be able to sustain its burden of proof at trial, we will accept as true, for purposes of this motion, the following allegations of T & N.

T & N maintains that PIGA has, to date, uniformly refused to provide coverage for claims involving latent injuries, like the asbestos-related diseases at issue in this case. In support of this position, T & N alleges that PIGA has never covered such a claim (Dahme Dep. at 26–27, 69; Rhule Dep. at 66–67, 131–32, 214); PIGA has failed to pay T & N's latent injury claims; PIGA has failed to provide T & N with claims-filing information as defined by 40 P.S. § 1701.-202(a)(2) (Rosenberg Aff., Ex. D–G, I); PIGA has failed to act upon T & N's written or oral communications (Rosenberg Aff. Ex. J; Rhule Dep. at 184); PIGA has refused to conduct a reasonable investigation of T & N's claims (Dahme Dep. at 26–27, 60–61; Rosenberg Aff.Exs. C, K; Rhule Dep. at 184); and PIGA has failed to settle T & N's claims. (Rhule Dep. at 184, Dahme Dep. at 27).

In response, PIGA maintains that it has declined to handle, investigate, or pay T & N's claims on the grounds that such claims do not amount to statutorily covered claims.

We turn now to the merits of Count III.

## DISCUSSION

In Count III of the Complaint, T & N seeks damages for PIGA's alleged bad faith handling of T & N's claims pursuant to 42 Pa.C.S. § 8371. In support of its motion PIGA argues that (1) PIGA is not an insurer pursuant to 42 Pa.C.S. § 8371; (2) PIGA is immune from bad faith claims under the Pennsylvania Insurance Guaranty Association Act; (3) T & N's claims for bad faith are not "covered claims" under the Insurance Guaranty Association Act; (4) T & N's claims for bad faith do not arise within thirty days after the determination of insolvency as required by the Insurance Guaranty Association Act; and (5) 42 Pa. C.S. § 8371 may not be applied retroactively. As discussed below, we agree with PIGA's analysis of its first two arguments and find it to be dispositive on the issue before us. Accordingly, we need not reach PIGA's remaining arguments.

1. *PIGA is not an insurer.*

42 Pa.C.S. § 8371 provides as follows:

> In an action *arising under an insurance policy,* if the court finds that *the insurer has acted in bad faith* towards the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

(emphasis added). Taken together, to sustain a claim for damages under 42 Pa.C.S. § 8371, T & N must prove: (1) that T & N's claims against PIGA arose under an insurance policy; (2) that PIGA was an "insurer"; and (3) that PIGA acted in bad faith. We have previously held that T & N's claims against PIGA arose under the insurance policies issued to Keasbey and Mattison Company, T & N's now dissolved but one-time subsidiary. (VAN ANTWERPEN, J., Memorandum and Order, May 28, 1992, 1992 WL 125554). Moreover, as discussed above, we will assume for purposes

of this motion that PIGA's conduct amounted to "bad faith." Accordingly, we turn now to the issue of whether or not PIGA is, as T & N alleges, an insurer for purposes of 42 Pa.C.S. § 8371.

■ As a federal court interpreting Pennsylvania state law in this diversity action, we must consider and accept the decisions of the state's highest court as the ultimate authority on this issue. *Ciccarelli v. Cary Canadian Mines, Ltd.*, 757 F.2d 548, 553 (3d Cir.1985); *Connecticut Mutual Life Insurance Co. v. Wyman,* 718 F.2d 63, 65 (3d Cir.1983). When, however, as in this case, the Pennsylvania Supreme Court has not authoritatively considered the issue at hand, "our disposition of such cases must be governed by a prediction of how the state's highest court would decide were it confronted with the problem." *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 661 (3d Cir.1980), *cert. denied,* 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980). *See also Becker v. Interstate Properties,* 569 F.2d 1203, 1205 (3d Cir. 1977), *cert. denied,* 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978). In this effort, we must give "proper regard" to the relevant rulings of other courts within the state. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). *See also Erie Castings Co. v. Grinding Supply, Inc.*, 736 F.2d 99, 100 (3d Cir.1984).

Since § 8371 contains no definition of the term "insurer," we must look to the Pennsylvania statutes, cases, and rules of statutory construction in resolving what appears to be an issue of first impression. *Coyne v. Allstate Ins. Co.*, 771 F.Supp. 673, 677–78 (E.D.Pa.1991). As discussed in Pennsylvania's rules of statutory construction:

> Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition.

1 Pa.C.S. § 1903. Moreover, the parameters of § 8371 may be discerned by reference to analogous Pennsylvania insurance law. As stated in 1 Pa.C.S. § 1921: "[w]hen the words of a statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters ... (5) ... other statutes upon the same or similar subjects." *See also Coyne,* 771 F.Supp. at 678. Accordingly, we look first to another statute pertaining to insurance, the Pennsylvania Unfair Insurance Practices Act (40 P.S. § 1171.1 *et seq.*) and also to the Pennsylvania Insurance Guaranty Association Act ("Insurance Guaranty Act") (40 P.S. § 1701.101 *et seq.*) which created PIGA, for a definition of "insurer."

The Pennsylvania Unfair Insurance Practices Act applies generally to all persons and entities "engaged in the business of insurance." 40 P.S. § 1171.3 (definition of "persons"). This definition is consistent with the peculiar and universally acknowledged meaning of the industry:

> "*Insurer.* The underwriter or insurance company with whom a contract of insurance is made. The one who assumes risk or underwrites a policy, or the underwriter or company with whom contract of insurance is made."

Black's Law Dictionary 139 (6th ed. 1990) (citations omitted). Similarly, the Insurance Guaranty Act defines "insurer" as "any insurance company, association or exchange which is authorized to write and is engaged in writing within this Commonwealth, on a direct basis, property and casualty insurance policies."[2] 40 P.S. § 1701.103(2). Taken together, then, it is generally recognized that an insurer issues policies, collects premiums, and in exchange assumes certain risks and contractual obligations. These conclusions are consistent with those of other jurisdictions. *See Isaacson v. California Insurance*

2. Plaintiffs maintain that since PIGA is "deemed to be an insurer" for purposes of the Guaranty Act, 40 P.S. § 1701.201(b)(1)(ii), the Act's definition is irrelevant. We disagree. As discussed below at pp. 8–12, PIGA does not assume all of the duties and obligations of an insolvent insurer, largely because PIGA is not an insurer in the full sense of the word.

*Guarantee Association,* 44 Cal.3d 775, 750 P.2d 297, 244 Cal.Rptr. 655 (1988); *Williams v. Champion Insurance Co.,* 590 So.2d 736 (La.Ct.App.3d Cir.1991).

These definitions coupled with a careful reading of the Insurance Guaranty Act make clear that PIGA is not an insurer for purposes of 42 Pa.C.S. § 8371. The Pennsylvania courts have previously recognized that PIGA is not, and was not created to act as, an ordinary insurance company. *See e.g. Schreffler v. Pennsylvania Insurance Guaranty Association,* 402 Pa.Super. 309, 586 A.2d 983 (1991), *app. denied,* 528 Pa. 644, 600 A.2d 196 (1991) (citing); *Sands v. Pennsylvania Insurance Guaranty Association,* 283 Pa.Super. 217, 423 A.2d 1224 (1980). The Insurance Guaranty Act does not place a claimant "in all cases in the same position she would have been in had the insurance company remained solvent." *Id.,* 586 A.2d at 985. Rather, the Act merely "creates a means by which limited recovery may be had in instances where none would have been possible due to the insolvency." *Id.*

PIGA is a statutory entity that depends solely on the Insurance Guaranty Act for its existence and for a definition of the scope of its powers, duties and protections. PIGA is an involuntary, unincorporated association of insurers admitted to transact business in Pennsylvania. Each insurer is required to participate in PIGA as a condition of doing business in Pennsylvania. 40 P.S. § 1701.201(a). And while the statutory purpose of PIGA is to provide insolvency insurance for each member in order to pay the claims arising out of policies issued by an insurer who becomes insolvent, PIGA's obligations are strictly limited to the payment of "covered claims." 40 P.S. §§ 1701.102, 1701.103(5)(a), 1701.201. A "covered claim" is defined, in relevant part, as "an unpaid claim, including a claim for unearned premiums, which arises under a property and casualty insurance policy of an insolvent insurer...." 40 P.S. § 1701.-103(5)(a). Furthermore, the Insurance Guaranty Act makes clear that "[i]n no event shall the association [PIGA] be obligated on a covered claim in an amount in excess of the obligation of the insolvent insurer under the policy under which the claim arises." 40 P.S. § 1701.201(b)(1)(i).

To this end, PIGA is "deemed" to be an insurer "to the extent of its obligations on ... covered claims" and to "... the extent [of such covered claims] shall have all rights, duties, and obligations of the insolvent insurer as if that insurer had not become insolvent." 40 P.S. § 1701.-201(b)(1)(ii). Accordingly, the courts have construed the Insurance Guaranty Act broadly to effect the purposes of the Act and to guarantee the payment of covered claims. *See Matusz v. Safeguard Mutual Ins. Co.,* 340 Pa.Super. 116, 119, 489 A.2d 868, 870 (1985). Where, however, "the Act explicitly denies a recovery ... or bars a cause of action ... [it] must be strictly construed." *Schreffler,* 586 A.2d at 985. Thus, under the provisions of the Insurance Guaranty Act, it is clear that, contrary to T & N's contention, PIGA does not "stand in the shoes" of an insolvent insurer for all purposes.

As the statute limits PIGA's authority to disburse funds to the payment of "covered claims," so does it limit PIGA's authority to collect funds. PIGA is not a profit-making entity as a matter of law. All of PIGA's funds are obtained by assessment of the member insurers, for purposes of and in amounts to ensure the payment of covered claims and other expenses authorized by the Act. 40 P.S. § 1701.-201(b)(c)(1)(iii). Similarly, if PIGA has assessed its members more than it will need to carry out its duties, it may refund the excess to the member insurers in proportion to their contributions. 40 P.S. § 1701.-302.

The provisions of the Insurance Guaranty Act demonstrate that PIGA is not in the "business" of insurance within the meaning of the Pennsylvania Unfair Insurance Practices Act, or otherwise. PIGA issues no policies, collects no premiums, makes no profits, and assumes no contractual obligations to the insureds. Its "business" is confined to providing insureds with a limited form of protection from financial loss occasioned by the insolvency of their insurer. By spreading the loss resulting from

such insolvencies among Pennsylvania's solvent insurers, PIGA in effect spreads the loss among other insureds, in the form of increased costs to the insurance-buying public. The Insurance Guaranty Act thus causes insureds generally to subsidize PIGA's payments to policyholders of insolvent insurers for their "covered claims." It demonstrates no intent to require the insurance-buying public similarly to pay for damage awards obtained against PIGA for violations of § 8371. If the legislature had wanted to make PIGA liable for the payment of punitive damages, costs, and attorneys fees it could have said so. Instead, the legislature chose to restrict PIGA's liability. Accordingly, we cannot find that PIGA is an insurer for purposes of § 8371.[3] For similar authority in other jurisdictions *see Isaacson v. California Insurance Guarantee Association,* 44 Cal.3d 775, 244 Cal.Rptr. 655, 750 P.2d 297 (1988); *Williams v. Champion Insurance Co.,* 590 So.2d 736 (La.Ct.App. 3d Cir.1991).

In response, T & N relies heavily on *Matusz v. Safeguard Mutual Ins. Co.,* 340 Pa.Super. 116, 119, 489 A.2d 868, 870 (1985), a case in which the Pennsylvania Supreme Court held that PIGA could be required to pay statutorily imposed extra-contractual damages provided that such damages arose under a validly asserted claim. More specifically, T & N maintains that, like 40 P.S. §§ 1009.106(a)(2) and 1009.107, which permit the recovery of interest for untimely insurance payments, the imposition of punitive damages, interest, and attorney's fees pursuant to § 8371 amounts to statutorily imposed extra-contractual damages for which PIGA should be liable. We disagree. The *Matusz* court merely held that statutorily-imposed interest on an insolvent insurer, because the *insurer* failed to make timely payments, could be fairly characterized as a claim "arising under" the terms of the insolvent insurer's policy. Thus, the court found that PIGA had to bear the cost of the insurer's untimeliness. If T & N were seeking to recover damages imposed against the now insolvent, American Mutual pursuant to § 8371, T & N might have a better claim, although there is a substantial difference between a claim for interest and a claim for punitive damages, attorneys fees, and costs. In this case, however, T & N seeks to impose damages under § 8371 for PIGA's alleged bad faith, and PIGA's alleged bad faith does not "arise[ ] under a property and casualty insurance policy *of an insolvent insurer.*" 40 P.S. § 1701.-103(5)(a) (definition of "covered claim") (emphasis added). Absent clear authority to the contrary, however, we are unwilling to extend *Matusz* to the facts before us.

Given the clearly delineated scope of PIGA's role as set forth in the Insurance Guaranty Act, and the express restrictions on PIGA's liability in section 40 P.S. §§ 1701.103(5)(a) and 1701.201(b), we conclude that the legislature did not intend PIGA to be liable for violations pursuant to § 8371.

2. *PIGA is immune.*

■ As a further restriction on PIGA's liability, the Insurance Guaranty Act provides statutory immunity for PIGA as follows:

> **Immunity.**
>
> There shall be no liability on the part of and no cause of action of any nature shall arise against any member insurer, the association or its agents or employees, the board of directors, or the commissioner or his representative for any action taken by any of them in the performance of their respective powers and duties under this act.

40 P.S. § 1701.601.

Under 40 P.S. § 1701.601, PIGA has no liability for actions taken by it in the performance of its duties under the Insurance Guaranty Act. *Schreffler v. Pennsylvania Insurance Guaranty Association,* 402 Pa.Super. 309, 586 A.2d 983 (1991), *app. denied,* 528 Pa. 644, 600 A.2d 196 (1991). For similar authority in other jurisdictions *see Fernandez v. Florida Insurance*

3. Based on the foregoing analysis, T & N's reliance on the Pennsylvania Unfair Insurance Practices Act and accompanying case law (see T & N's Memorandum In Opposition To PIGA's Motion For Summary Judgment at 24) is similarly misplaced.

*Guaranty Association,* 383 So.2d 974 (Fla. Dist.Ct.App.1980), *petition denied,* 389 So.2d 1109 (Fla.1980); *Williams v. Champion Insurance Co.,* 590 So.2d 736 (La.Ct. App.3d Cir.1991).

T & N alleges that PIGA has failed to investigate, pay, or settle, an alleged covered claim, and has failed to advise T & N of purported claims procedures. Taken together, however, these allegations are undeniably part of PIGA's statutory powers and duties to adjust, handle, and pay covered claims while denying all others. 40 P.S. § 1701.201. Moreover, to date, PIGA has taken the position that it is statutorily barred from paying T & N's claims because T & N's claims are not covered claims. Although, we have previously held that the settlement agreement "arises" under the terms of an insurance policy, pending further discovery, we were unable to make a dispositive finding of whether or not T & N has satisfied the remaining requirements of a covered claim, including the residency requirement. *See* 40 P.S. § 1701.-103(5)(a)(i). Until such time as we can make such a finding, PIGA's refusal to pay out on these claims clearly amounts to actions not only taken but also required by PIGA in the performance of its duties under the Insurance Guaranty Act. *See* 40 P.S. § 1701.201. Accordingly, we must find that PIGA is immune from T & N's claims for bad faith. To the extent that we may ultimately find that T & N's claims are in fact covered claims, PIGA may lose its statutory immunity to the extent that it then fails to assume, at such later date, its payment obligations in a timely manner. We note that *Blackwell v. Pennsylvania Insurance Guaranty Association,* 390 Pa.Super. 31, 567 A.2d 1103 (1989) held that PIGA could be required to pay interest where it failed to pay a claim *after* such time as the court had entered judgement in plaintiff's favor.

## CONCLUSION

Having found that PIGA is not an insurer for purposes of 42 Pa.C.S. § 8371 and that PIGA is immune from bad faith claims under the Insurance Guaranty Act, we grant PIGA's motion for summary judgment on Count III of the Complaint.