The HOME INSURANCE COMPANY,
Plaintiff,

v.

The LAW OFFICES OF JONATHAN
DEYOUNG, P.C., et al.,
Defendants.

Civil Action No. 97–1659.

United States District Court,
E.D. Pennsylvania.

Dec. 30, 1998.

Victor M. Verbeke, Cozen and O'Connor, Phila, PA, Victor M. Verbeke, Sherr, Joffe & Zuckerman, P.C., W. Conshohocken, PA, for The Home Insurance Company.

John L. Walfish, Law Offices of Jonathan De Young, King of Prussia, PA, for Deyoung, Walfish & Noonan, P.C., Ralph J. Saulino, C.P.A.

John L. Walfish, King of Prusia, PA, pro se.

Henry O'Hara, Kulpsville, PA, for Cecelia E. Garritt.

John J. Koresko, V, Baldwin Renner Clark & Koresko, King of Prussia, PA, for Elva Hoisington.

Morton Tirnauer, Wayne, PA, pro se.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

### I. INTRODUCTION

Plaintiff, Home Insurance Co., provided professional liability insurance to defendants Law Offices of Jonathan DeYoung, P.C. ("Law Offices"), which later became DeYoung, Walfish & Noonan ("DWN"), and John Walfish, Esq. ("Walfish"), and Ralph Saulino, CPA ("Saulino"), as professional employees of the firm. The one-year claims-made policies ran from May 12, 1993 through May 12, 1994, and from May 12, 1994 through May 12, 1995. Jonathan DeYoung died on February 19, 1995. At the request of DWN, plaintiff provided tail coverage for Jonathan DeYoung, individually, effective May 12, 1995, for

an unlimited period of time after his death. The defendants are either parties to pending lawsuits or have otherwise asserted claims alleging legal malpractice against Jonathan DeYoung, Law Offices, DWN, Walfish, and Saulino since Jonathan DeYoung's death. Plaintiff has brought this action seeking either rescission of the two (2) one-year claims-made insurance policies and the tail coverage, or a declaration that due to material misrepresentations on the renewal applications for liability insurance by Jonathan DeYoung, plaintiff had no duty to defend or indemnify the insured defendants under either the tail coverage or the claims-made policies against the lawsuits and claims brought by the defendant-claimants. Before the Court is plaintiff's motion for summary judgment.

In its motion for summary judgment, plaintiff argues on several grounds that it has no duty to defend or indemnify Jonathan DeYoung, Law Offices, DWN, Walfish, and Saulino under either the claims-made policies or tail coverage against the lawsuits and claims that have been brought by the defendant-claimants: (1) as to claimants Tirnauer, Sylk, Vagnoni, and Hoisington, their claims were made after the last claims-made policy had expired and were not within the policy period; (2) as to claimants Tirnauer, Vagnoni, and Hoisington, their pending lawsuits do not properly name the personal representative of the estate of Jonathan DeYoung as a defendant in the pending actions; and (3) as to Hoisington, coverage is excluded under the "professional services" exclusion because Jonathan DeYoung was not acting in his professional capacity as an attorney or fiduciary when the alleged malpractice occurred. The Court will grant plaintiff's motion for summary judgment as to defendant-claimants Tirnauer and Sylk, and will grant in part and deny in part the motion as to defendant-claimants Vagnoni and Hoisington.

1. Defendant-claimants who have been dismissed are: Theodore Menke, Cecelia Garritt, and Nadeem Najafi.

2. Defendant-claimants who have had defaults entered against them are: Janice DeYoung and Michael Vagnoni.

## II. BACKGROUND

On January 22, 1993, Jonathan DeYoung submitted to plaintiff a renewal application for professional liability insurance on behalf of defendant Law Offices of Jonathan DeYoung, P.C. ("Law Offices") and its employees, including John Walfish, Esq. ("Walfish") and Ralph Saulino, CPA ("Saulino"). Plaintiff thereby issued a one-year claims-made insurance policy for Law Offices and its employees with effective dates from May 12, 1993 through May 12, 1994. On January 6, 1994, Jonathan DeYoung submitted to plaintiff another renewal application on behalf of Law Offices and its employees, which plaintiff granted, covering the period from May 12, 1994 through May 12, 1995. On August 29, 1994, Law Offices requested, and plaintiff agreed, to change the named insured on the policy from Law Offices to DeYoung, Walfish & Noonan ("DWN"). On February 19, 1995, Jonathan DeYoung died. On April 6, 1995, the remaining partners of DWN requested unlimited tail coverage insurance for Jonathan DeYoung alone, which was granted by plaintiff, effective May 12, 1995. Also on May 12, 1995, coverage for DWN and its employees under the last one-year claims-made policy expired.

After Jonathan DeYoung's death, plaintiff received notice that several lawsuits and claims had been asserted by or on behalf of the defendant-claimants against Jonathan DeYoung, Law Offices, DWN, Walfish, and Saulino. As a result, plaintiff filed the instant complaint seeking either rescission of the claims-made and tail coverage policies because of alleged material misrepresentations by Jonathan DeYoung on the renewal applications, or declaratory judgment relief against the defendant-claimants. Thus far, some of the defendant-claimants have been dismissed as parties by plaintiff,[1] and others have had defaults entered against them for failing to file responsive pleadings.[2][3] Pres-

3. Plaintiff requested the entry of default against Thomas Sylk, but none was entered because the name in the waiver of service form was not clear to the Clerk. The Court has reviewed the form, and has determined that the signature on the form appears to be that of "T.M. Sylk." There-

ently pending against Jonathan DeYoung, Law Offices, DWN, Walfish, and Saulino are the lawsuits and claims of defendant-claimants Morton Tirnauer, Thomas Sylk, Michael Vagnoni, and Elva Hoisington. Plaintiff filed the instant motion for summary judgment seeking a declaration from the Court that it has no duty to defend or indemnify Jonathan DeYoung, Law Offices, DWN, Walfish, and Saulino against any lawsuits and claims brought by defendant-claimants Tirnauer, Sylk, Vagnoni, and Hoisington.

## III. LEGAL STANDARD

### A. *Summary Judgment*

Summary judgment is appropriate if the moving party can "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Court must accept the non-movant's version of the facts as true, and resolve conflicts in the non-movant's favor. *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has done so, however, the non-moving party cannot rest on its pleadings. *See* Fed.R.Civ.P. 56(e). Rather, the non-movant must then "make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits, or by depositions and admissions on file." *Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir.1992); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Even if the non-movant has not re-

sponded to the motion for summary judgment under Rule 56(e), the Court has an obligation to determine that the movant is entitled to judgment as a matter of law. *See* Local Rule 7.1(c) (stating that summary judgment may not be entered on the ground that the motion for summary judgment is unopposed). The extent to which plaintiff is entitled to the declaratory relief it seeks, the Court is required to inquire into the basis of the entitlement to such relief. As to those defendants who have had defaults entered against them, the Court must nevertheless inquire into whether judgment is appropriate, and if so, the entitlement of the relief sought by plaintiff. Fed.R.Civ.P. 55(b)(2).

### B. *Review of Insurance Contracts*

■ Under Pennsylvania law, it is the province of the Court to interpret contracts of insurance. *Niagara Fire Ins. v. Pepicelli, Pepicelli, Watts and Youngs, P.C.*, 821 F.2d 216, 219 (3d Cir.1987). The primary consideration in interpreting an insurance contract is "to ascertain the intent of the parties as manifested by the language of the written instrument." *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (Pa.1983). In doing so, "an insurance policy must be read as a whole [by the court] and construed according to the plain meaning of its terms." *C.H. Heist Caribe Corp. v. American Home Assurance Co.*, 640 F.2d 479, 481 (3d Cir.1981); *see also Koval v. Liberty Mut. Ins. Co.*, 366 Pa.Super. 415, 531 A.2d 487, 489 (1987) ("[The court] must construe a contract of insurance as a whole and not in discrete units.").[4] Where a provision of a contract of insurance is ambiguous, the provision must be construed in favor of the insured, and against the insurer, the drafter of the contract. *Standard Venetian Blind Co.*, 469 A.2d at 566. However, "a court should read policy provisions to avoid ambiguities, if possible, and not torture the language to create them." *St. Paul Fire & Marine Ins. Co. v. United States Fire Ins. Co.*, 655 F.2d 521, 524 (3d Cir.1981).

fore, it is proper to enter the default against defendant-claimant Sylk.

4. The parties do not dispute that Pennsylvania law governs the interpretation and application of plaintiff's policy to the factual allegations of the underlying claims.

An insurer's duty to defend an insured arises "whenever the complaint filed by the injured party may potentially come within the policy's coverage." *Pacific Indem. Co. v. Linn,* 766 F.2d 754, 760 (3d Cir.1985). On the other hand, the duty to indemnify is more limited than an insurer's duty to defend, which arises only "if it is established that the insured's damages are actually within the policy coverage." *Lucker Mfg. v. Home Ins. Co.,* 23 F.3d 808, 821 (3d Cir.1994). The insurer has the burden of showing that policy exclusions preclude coverage. *American States Ins. Co. v. Maryland Cas. Co.,* 427 Pa.Super. 170, 628 A.2d 880, 887 (1993); *Miller v. Boston Ins. Co.,* 420 Pa. 566, 218 A.2d 275, 277 (1966). Exclusions are strictly construed against the insurer. *Selko v. Home Ins. Co.,* 139 F.3d 146, 152 n. 3 (3d Cir.1998). However, "[e]xclusions from coverage contained in an insurance policy will be effective against an insured if they are clearly worded and conspicuously displayed, irrespective of whether the insured read the limitations or understood their import." *Pacific Indem. Co.,* 766 F.2d at 761.

## IV. ANALYSIS

### A. *Claims–Made Policy versus Tail Coverage Insurance*

This case involves two types of insurance contracts, claims-made policy and tail coverage. A claims-made policy "provides coverage for a wrongful act regardless of when it took place, as long as a claim is made during the relevant policy period." *Township of Center, Butler County, Pennsylvania v. First Mercury Syndicate, Inc.,* 117 F.3d 115, 118 (3d Cir.1997). The threshold issue under a claims-made policy is whether the claims were first made during the effective dates of the policies. Tail coverage, also referred to as an extended reporting period, extends the time within which a claim may be made after the cancellation or expiration of a particular claims-made policy. Tail coverage provides insurance protection for acts, errors, or omissions that occurred while the initial claims-made policy was in effect, so long as a claim is asserted before the expiration of the tail period. *See* 7 Couch on Ins. § 102:26 (3d ed.).

In this case, it is undisputed that the one-year policies of professional liability insurance issued by plaintiff to Jonathan DeYoung, Law Offices, DWN, and its employees, Walfish and Saulino, are claims-made policies.[5] The one-year policies ran from May 12, 1993 through May 12, 1994, and from May 12, 1994 through May 12, 1995. It is also undisputed that the policy issued only to Jonathan DeYoung, at the request of DWN subsequent to Jonathan DeYoung's death,

---

5. A claims-made policy protects the insured only against claims first made during the life of the policy. In contrast, an occurrence policy protects the insured from liability for any act or occurrence done while the policy is in effect and for which claims may arise during the policy period or at a later date. *Bensalem Township v. Western World Ins. Co.,* 609 F.Supp. 1343, 1347 n. 2 (E.D.Pa.1985) (quoting *St. Paul Fire & Marine Ins. Co. v. Barry,* 438 U.S. 531, 535 n. 3, 98 S.Ct. 2923, 57 L.Ed.2d 932 (1978)); *see also Britamco Underwriters, Inc. v. Emerald Abstract Co., Inc.,* 855 F.Supp. 793, 794 (E.D.Pa.1994). The language of the claims-made policy at issue reads:

**This is a Claims Made Policy—Please Read Carefully**

. . .

**Coverage**
**I. Professional Liability and Claims Made Clause:**
To pay on behalf of the insured all sums in excess of the deductible amount stated in the Declarations which the Insured shall become legally obligated to pay as damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD

(a) by reason of any act, error or omission in professional services rendered or that should have been rendered by the insured or by any person for whose acts, errors or omissions the Insured is legally responsible, and arising out of the conduct of the Insured's profession as a lawyer or notary public;

. . .

Claim, whenever used in this policy, means a demand received by the Insured for money or services including the service of suit or institution of arbitration proceedings against the Insured.

. . .

Policy Period, whenever used in this policy, means the period from the inception date of this policy to the policy expiration date as set forth in the Declarations or its earlier termination date, if any.

Pl.Mot. for Summ.J., Ex. B (quoting Policy at 2–3) (emphasis in original).

effective May 12, 1995 for an unlimited time, is tail coverage insurance.[6]

### B. Coverage for Claims by Morton Tirnauer

#### 1. Claims against Jonathan DeYoung, Law Offices, DWN, Walfish, and Saulino under the claims-made policy.

██ Plaintiff contends that it has no duty to defend or indemnify the claim and lawsuit of defendant-claimant Tirnauer because the claim was first made after the policy had expired.[7] Plaintiff states, and Tirnauer admits in his response, that Tirnauer's claim was first made by letter from Tirnauer's counsel to plaintiff on September 11, 1995. See Ans. of Tirnauer ¶ 7. Subsequently, on April 3, 1996, Tirnauer filed a complaint in the Montgomery County Court of Common Pleas only naming DWN as a defendant. On May 30, 1996, Tirnauer amended the complaint to include Law Offices as a defendant in the pending action. Thus, Tirnauer first asserted his claim on September 11, 1995, four months after the last one-year claims-made insurance policy expired on May 12, 1995. Therefore, the Court finds that there is no genuine issue of material fact and plain-tiff does not have a duty to defend or indemnify Tirnauer's claim and pending lawsuit under the last claims-made policy issued to Jonathan DeYoung, Law Offices, DWN, Walfish, and Saulino.[8]

### C. Coverage for Claims by Thomas Sylk

#### 1. Claims against Jonathan DeYoung, Law Offices, DWN, Walfish, and Saulino under the claims-made policy.

Plaintiff contends that it is entitled to judgment as a matter of law against defendant-claimant Sylk because Sylk's claim against Jonathan DeYoung, Law Offices, DWN, Walfish, and Saulino was first made after the last claims-made policy had expired.[9] Plaintiff states that Sylk's claim was first made on January 3, 1996 by letter to plaintiff.[10] Accepting these facts as true, as there has been no response filed by Sylk, Sylk's claim was first made almost eight months after the last claims-made policy expired on May 12, 1995. Therefore, the Court finds that there is no genuine issue of material fact outstanding and plaintiff does not have a duty to defend or indemnify Sylk's claim under the last claims-made policy is-

---

**6.** The language of the tail coverage at issue reads as follows:

**V. Option to Purchase Non–Practicing Extension Coverage**

. . .

In the event of the death or permanent total disability preventing the further practice of an Insured as provided by the Insured (a), such Insured shall be entitled, at no additional premium, to an Unlimited Extended Reporting period for all claims first made after the termination of the policy period arising out of any act, error or omission occurring prior to the termination of the policy period and otherwise covered by this policy.

Pl.Mot. for Summ.J., Ex. B (quoting Policy at 4) (emphasis in original).

**7.** In their answer, DWN, Walfish, and Saulino acknowledge that plaintiff has no duty to defend or indemnify against claims made by Tirnauer as no valid insurance policy was in effect when the claims were made.

**8.** Defendant Tirnauer contends, without supporting authority, that plaintiff cannot claim coverage for Jonathan DeYoung while disclaiming coverage for Law Offices, DWN, and its employees because DeYoung was acting in his capacity as an attorney for the law firm. The Court finds this argument unavailing. The claims-made policy covering DWN and its employees, including Jonathan DeYoung, expired on May 12, 1995 before Tirnauer asserted a claim against the insureds. The tail coverage applicable only to Jonathan DeYoung is separate and apart from the expired claims-made policies.

To invoke plaintiff's duty to defend or indemnify, Tirnauer must properly assert a claim against the personal representative of the estate of Jonathan DeYoung under the tail coverage. In his response to plaintiff's motion for summary judgment, Tirnauer has reserved the right to pursue any action against the estate of Jonathan DeYoung as is necessary, but has not yet done so. Consequently, as Tirnauer has not yet pursued any such action, the issue of whether plaintiff must defend or indemnify against an action naming the estate of Jonathan DeYoung as a defendant is not reached by the Court.

**9.** In their answer, DWN, Walfish, and Saulino acknowledge that plaintiff has no duty to defend or indemnify against claims made by Sylk as no valid insurance policy was in effect when the claims were made.

**10.** Sylk has not filed a response to plaintiff's complaint or motion for summary judgment.

sued to Jonathan DeYoung, Law Offices, DWN, Walfish, and Saulino.[11]

### D. Coverage for Claims by Michael Vagnoni

#### 1. Claims against Jonathan DeYoung, Law Offices, DWN, Walfish, and Saulino under the claims-made policy.

Plaintiff also contends that it has no duty to defend or indemnify the claim of defendant-claimant Vagnoni because the claim was first made after the last claims-made policy had expired.[12] Plaintiff states that Vagnoni's claim was first made by the filing of a writ of summons on July 3, 1995 in the Chester County Court of Common Pleas naming Law Offices, DWN, and Jane Doe, Administratrix of the Estate of Jonathan DeYoung as defendants.[13] Plaintiff alleges that it first received notice of the claim on August 2, 1996 by letter from Vagnoni's counsel. Accepting these facts as true, as there has been no response filed by Vagnoni, Vagnoni's claim was first made on July 3, 1995, almost two months after the expiration of the last claims-made policy on May 12, 1995. Therefore, the Court finds that there is no genuine issue of material fact and plaintiff does not have a duty to defend or indemnify Vagnoni's claim under the last claims-made policy issued to Jonathan DeYoung, Law Offices, DWN, Walfish, and Saulino.

#### 2. Claims against Jonathan DeYoung under the tail coverage.

a. Naming "Jane Doe, Administratrix of the Estate of Jonathan DeYoung" as a defendant in an action qualifies as a claim under the policy.

Plaintiff also contends that it has no duty to defend or indemnify against the law-

suit filed by Vagnoni against Jonathan DeYoung under the tail coverage. The tail coverage became effective on May 12, 1995 only as to Jonathan DeYoung. Plaintiff argues that because Vagnoni's lawsuit does not name the personal representative of the estate of Jonathan DeYoung as a defendant in the action, it has no duty to defend or indemnify.[14] Plaintiff has not argued that the estate of Jonathan DeYoung lacked notice of Vagnoni's lawsuit.

Pennsylvania law requires that "all actions that survive a decedent must be brought by or against the personal representative." *Marzella v. King*, 256 Pa.Super. 179, 389 A.2d 659, 660–661 (Pa.Super.1978); *Wilkes–Barre Gen. Hosp. v. Lesho*, 62 Pa. Cmwlth. 222, 435 A.2d 1340, 1342 (1981); 20 Pa.Con.Stat.Ann. § 3373 ("An action or proceeding to enforce any right or liability which survives a decedent may be brought by or against his personal representative alone or with other parties as though the decedent were alive."). "Further, a decedent's estate cannot be a party to litigation unless a personal representative exists." *Marzella*, 389 A.2d at 661; *see also Prevish v. Northwest Med. Ctr. Oil City Campus*, 692 A.2d 192, 200 (Pa.Super.1997), *aff'd*, 717 A.2d 1023 (Pa. 1998). Therefore, by naming the administratrix of the estate, Vagnoni's lawsuit named the incorrect defendant.

"A claim is a demand for something as a right." *Bensalem Township v. Western World Ins. Co.*, 609 F.Supp. 1343, 1348 (E.D.Pa.1985) (quoting *Phoenix Ins. Co. v. Sukut Constr. Co.*, 136 Cal.App.3d 673, 677, 186 Cal.Rptr. 513 (1982)). While it is true that a lawsuit does not have to be filed in order for a claim to be asserted against an insured, *United Capital Ins. Co. v. New York Marine and Gen. Ins. Co.*, No. 91–4862, 1992

---

11. To date, Sylk has not filed a lawsuit naming the estate of Jonathan DeYoung as a defendant. Thus, the Court does not have to decide whether the plaintiff has a duty to defend or indemnify against such an action.

12. In their answer, DWN, Walfish, and Saulino acknowledge that plaintiff has no duty to defend or indemnify against claims by Vagnoni as no valid insurance policy was in effect when the claims were made.

13. On July 10, 1997, a default was entered against Vagnoni for failing to respond to the plaintiff's complaint and he has not filed a response to plaintiff's motion for summary judgment.

14. Vagnoni's suit names "Jane Doe, Administratrix of the Estate of Jonathan DeYoung" as a defendant. The estate of Jonathan DeYoung has not been probated as yet, and letters of administration have not issued.

WL 38343, at *2 (E.D.Pa. Feb.19, 1992), the filing of a suit demanding payment as a matter of right, albeit one naming an incorrect defendant, can serve as a demand for money against a party not named as a defendant in the lawsuit, if the lawsuit put the insured party on notice of the plaintiff's demand. In other words, the lawsuit against the administratrix of the estate of Jonathan DeYoung rather than the personal representative, although naming the wrong legal party, put the estate of Jonathan DeYoung on notice of the existence of a claim against it. Therefore, the Court finds that because a claim, in the form of the filing of a lawsuit, was asserted within the relevant policy period against the estate of Jonathan DeYoung, under the tail coverage, of which the estate of Jonathan DeYoung had notice, plaintiff's duty to defend or indemnify was duly invoked.

### E. Coverage for Claims by Elva Hoisington

1. *Claims against Jonathan DeYoung, Law Offices, DWN, Walfish and Saulino under the claims-made policy.*

Plaintiff insists that it has no duty to defend or indemnify the claim of defendant-claimant Hoisington because Hoisington's claim was first made after the expiration of the last one-year claims-made policy.[15] Plaintiff contends that Hoisington first asserted her claim on June 2, 1995 by letter from her counsel, three weeks after the policy expired on May 12, 1995. Defendant-claimant Hoisington contests plaintiff's factual assertions and states that she visited the offices of DWN shortly after DeYoung's death, but within the policy period, and made a demand for her money. Hoisington contends in her affidavit that, in February, 1995, within the week after Jonathan DeYoung's death on February 19, 1995, she went to the offices of DWN, spoke with Walfish, and asked about her monies. Hoisington avers, therefore, that her contact with DWN, by way of Walfish, qualifies as asserting a claim against the insureds, that DWN and its employees had notice of her claim before the last claims-made policy expired, and that plaintiff's duty to defend and indemnify was invoked.

If Hoisington's contact with DWN in February, 1995, subsequent to Jonathan DeYoung's death, qualifies under the claims-made policy as a claim, then plaintiff is not entitled to summary judgment on this issue. If, however, Hoisington's contact with DWN was merely an inquiry, as opposed to a demand for money or services, then plaintiff is entitled to summary judgment as to Hoisington's claims under the claims-made policy because Hoisington's claim would have been first made on June 2, 1995, by letter from her counsel to DWN, after the last claims-made policy expired.

The question of whether defendant-claimant Hoisington's claim was first made within the policy period depends upon the definition of "claim." The policy defines claim as follows:

> Claim, whenever used in this policy, means a demand received by the Insured for money or services including the service of suit or institution of arbitration proceedings against the Insured.

Pl.Mot. for Summ.J., Ex. B (quoting Policy at 3). Additionally, case law has defined a "claim," in reference to coverage under a claims-made policy, as "a demand for something as a right." *Bensalem Township v. Western World Ins. Co.*, 609 F.Supp. 1343, 1348 (E.D.Pa.1985) (quoting *Phoenix Ins. Co. v. Sukut Constr. Co.*, 136 Cal.App.3d 673, 677, 186 Cal.Rptr. 513 (1982)); *see also Hoyt v. St. Paul Fire & Marine Ins. Co.*, 607 F.2d 864, 866 (9th Cir.1979) (holding that a request for information and explanation is not sufficient to constitute a claim, absent a demand for action by the insured); *United Capital Ins. Co. v. New York Marine and Gen. Ins. Co.*, No. 91–4862, 1992 WL 38343, at *2 (E.D.Pa. Feb.19, 1992) (agreeing with the *Bensalem* court that a claim is a demand for something as a right).

---

15. In their answer, DWN, Walfish, and Saulino acknowledge that plaintiff has no duty to defend or indemnify against claims made by Hoisington as no valid insurance policy was in effect when the claims were made.

In support of Hoisington's position that she first asserted a claim against Jonathan DeYoung, Law Offices, DWN, Walfish, and Saulino in February, 1995, before the last claims-made policy expired, Hoisington's affidavit asserts several facts:

(1) In February, 1995, the week following Jonathan DeYoung's death, Hoisington visited the offices of DWN and spoke to Walfish about her money. Walfish apparently was unable to help Hoisington; [16]

(2) In February, 1995, after contacting DWN regarding her money, Hoisington consulted with a law firm about her rights, who issued a letter on March 22, 1995 to Hoisington reflecting its opinions; [17] and

(3) Hoisington retained different counsel, who, on June 2, 1995, sent a letter to DWN representing Hoisington's claims as to her lost money.[18]

In further support of her assertion that she first made a claim in February, 1995, as is required to effectuate coverage under the claims-made policy, Hoisington relies upon the deposition testimony of Walfish, whereby Walfish testified regarding his conversations with Hoisington that:

As to Mrs. Hoisington, Mrs. Hoisington called our office some days or weeks after Jonathan's death, *certainly within eight weeks after his death, asking as to the status of her monies.* We indicated to Mrs. Hoisington that we had no knowledge of any monies. Mrs. Hoisington was natu-

rally upset and subsequently she retained counsel....

Ans. of Hoisington, at 3 (emphasis added). Upon cross-examination, Walfish clarified his prior answer by testifying that:

I believe my answer previously was I don't believe that Mrs. Hoisington indicated to me where her funds were. In fact, I think that *the nature of her call was where are my funds,* and to which I replied I don't know what you're talking about, at which point Mrs. Hoisington became a little bit out of control and then I had her deal with Mr. Walsh.

Ans. of Hoisington, at 4 (emphasis added).

The record, as stated, does not indicate that Hoisington made a demand for money or services in her conversations with Walfish in February, 1995 or by seeking advice from counsel in March, 1995. The Court finds that while Hoisington contacted DWN within the claims-made policy period, during these contacts, she merely inquired about the whereabouts of her monies. Thus, Hoisington's communications with Walfish, as stated in the record, failed to demand that DWN take the requisite affirmative action in correcting the alleged wrong or legal malpractice committed by Jonathan DeYoung while a partner at DWN. *See Hoyt v. St. Paul Fire & Marine Ins. Co.,* 607 F.2d 864, 866 (9th Cir.1979) (finding that a letter from an alleged victim's lawyer that made reference to possible wrongdoing by the plaintiff, which went on to ask for "[a]ny thought or information you have on this point," was not a claim

---

**16.** The relevant portion of the Hoisington affidavit reads as follows:

I first discovered that my money might be lost in February, 1995 when DeYoung died. The week following DeYoung's death, in February, 1995, I went to the offices of DeYoung, Walfish and Noonan, P.C. and *spoke with persons there including John Walfish, Esquire about my matter.* I also saw DeYoung's son and his wife walking around the office. *When I asked about my money,* Mr. Walfish said that they had a conflict and could not help me. Basically, they confirmed they had no idea where it could be and it was missing.

Hoisington Aff. ¶ 33 (emphasis added).

**17.** The relevant portion of the Hoisington affidavit reads as follows:

After notifying John Walfish, Esquire and DeYoung, Walfish and Noonan, P.C. in February,

1995 of my loss, I consulted the law firm of Fox Differ, et al. about my rights during the last week of February, 1995. They issued a letter to me advising me of their views on March 22, 1995.

Hoisington Aff. ¶ 34.

**18.** The relevant portion of the Hoisington affidavit reads as follows:

After Walfish and DeYoung, Walfish and Noonan, P.C. refused to deal with me, I attempted to recover by hiring John Koresko, Esquire and his firm to represent me. I know Mr. Koresko sent a letter to Gregory Noonan, Esquire repeating my claim in June, 1995, but I also know that Mr. Walfish was aware of my claim of missing money since I visited him in February, 1995.

Hoisington Aff. ¶ 36.

under a claims-made policy, but rather was only a request for information and explanation); *United Capital Ins. Co. v. New York Marine and General Ins. Co.*, No. 91–4862, 1992 WL 38343, at *3 (E.D.Pa. Feb.19, 1992) (concluding that a letter sent to plaintiff constituted a claim because the letter "specifies the nature of the injuries, alleges negligence on the part of the insured and makes a demand for monies in the form of reimbursement"); *Insurance Corp. of America v. Dillon, Hardamon & Cohen*, 725 F.Supp. 1461, 1469 (N.D.Ind.1988) ("The word claim requires a demand for money or property or some specific relief, accompanied by an allegation of negligence, malpractice, or some kind of wrongdoing."); *Bensalem Township v. Western World Ins. Co.*, 609 F.Supp. 1343, 1348–49 (E.D.Pa.1985) (holding that neither a letter from the EEOC nor an attached charge of age discrimination qualified as a claim under a claims-made policy because the documents failed to request money or other relief, and only served to put the plaintiff on notice that a demand for relief may subsequently follow); *Phoenix Ins. Co. v. Sukut Constr. Co.*, 136 Cal.App.3d 673, 677, 186 Cal.Rptr. 513 (1982) (determining that defendant made a claim by demanding that lawyer correct the deficiencies of a mechanics lien, free of charge, because it was a demand that the damage be corrected and completed for work that the lawyer had already been compensated); *Chalk v. Trans Power Mfg., Inc.*, 153 Wis.2d 621, 630–33, 451 N.W.2d 770 (Wis. Ct.App.1989) ("[T]he 'demand for money or services' that will constitute a claim under the [ ] policy must in some manner relate to remedying the 'wrong' . . . either to correct it or compensate for it.").

Thus, it is clear that Hoisington only inquired as to the status and whereabouts of her monies in February, 1995, without making a demand for her money or services from DWN to correct Jonathan DeYoung's alleged malpractice and compensate her for her apparent loss. Because there was no demand asserted, there was no claim first made within the relevant claims-made policy period. Therefore, the Court finds that there is no

genuine issue of material fact and plaintiff does not have a duty to defend or indemnify Hoisington's claim under the last claims-made policy issued to Jonathan DeYoung, Law Offices, DWN, Walfish, and Saulino.

### 2. *Claims against Jonathan DeYoung under the tail coverage.*

#### a. *Naming "Estate of Jonathan DeYoung, Deceased" as a defendant in an action qualifies as a claim under the policy.*

Plaintiff also contends that it has no duty to defend or indemnify against the lawsuit filed by Hoisington against Jonathan DeYoung under the tail coverage.[19] The tail coverage became effective on May 12, 1995 only as to Jonathan DeYoung. Plaintiff argues that because Hoisington's lawsuit does not validly name the personal representative of the estate of Jonathan DeYoung as a defendant in the action, it has no duty to defend or indemnify. As with the Vagnoni claim, by filing a suit, albeit naming the incorrect defendant, Hoisington put the estate of Jonathan DeYoung on notice of her demand for money as a matter of right. Thus, plaintiff's duty to defend or indemnify was duly invoked.

#### b. *Was DeYoung acting in his professional capacity as lawyer as stated in the policy?*

In the alternative, plaintiff argues that even if Hoisington's request is deemed to be a claim within the relevant policy period as stated in either the claims-made or tail coverage policies, her claim is excluded from coverage under both policies because Jonathan DeYoung was not acting in his capacity as a lawyer, i.e., rendering professional services, but rather was engaging in personal loan transactions when dealing with Hoisington. To the contrary, Hoisington contends that Jonathan DeYoung acted in his capacity as an attorney and rendered professional services such that the insurance coverage would apply. In her affidavit, Hoisington claims that DeYoung has been her attorney since 1963 and has handled numerous legal mat-

---

**19.** Hoisington commenced her lawsuit on January 21, 1997 by the filing of a writ of summons in the Montgomery County Court of Common Pleas, naming as defendants DWN, Estate of Jonathan DeYoung, deceased, Noonan, and Walfish.

ters, including the preparation of a will. *See* Hoisington Aff. ¶ 4. In the June 2, 1995 letter from Hoisington's counsel to DWN, Hoisington's counsel claimed that over a fifteen year period, Hoisington entrusted Jonathan DeYoung, as her attorney, with her retirement money (approximately $45,000) to invest on her behalf. *See* Pl. Mot. for Summ. J., Ex. K. In return, Jonathan DeYoung. issued promissory notes guaranteeing an interest rate of 14% and memorializing the transfer of funds from Hoisington to DeYoung. *See* Hoisington Aff. ¶¶ 21–30. On at least three occasions, DeYoung issued law firm checks to Hoisington representing her investment returns. *Id.* However, there was no written fee agreement or bills charged for the services provided by Jonathan DeYoung. *Id.* at ¶¶ 15–16.

To determine whether summary judgment in favor of plaintiff is proper, the Court must decide if the factual issue of whether Jonathan DeYoung rendered professional services as an attorney within the parameters of the policies, or engaged in personal transactions beyond the policies' scope, is a genuinely disputed issue of material fact. The Third Circuit has counseled, "[i]n determining whether a particular act is of a professional nature or a 'professional service,' we must look not to the title or character of the party performing the act, but to the act itself." *Harad v. Aetna Cas. & Sur. Co.*, 839 F.2d 979, 984 (3d Cir.1988) (citing *Bank of California, N.A. v. Opie*, 663 F.2d 977, 981 (9th Cir.1981)); *see also Visiting Nurse Ass'n of Greater Philadelphia v. St. Paul Fire & Marine Ins. Co.*, 65 F.3d 1097, 1101 (3d Cir.1995).

The policy states that professional liability coverage applies to damages "as a result of claims first made against the insured during the policy period by reason of any act, error or omission in professional services rendered or that should have been rendered by the insured ... and arising out of the conduct of the insured's profession as a lawyer or notary public." Pl. Mot. for Summ. J., Ex. B (quoting Policy at 2). The policy itself gives no guidance as to the meaning of the term "professional services."

Pennsylvania courts have found that where a professional liability insurance policy fails to define "professional services," as is the case here, the phrase standing alone can be deemed ambiguous, and therefore, must be construed against the insurer. *See Biborosch v. Transamerica Ins. Co.*, 412 Pa.Super. 505, 603 A.2d 1050, 1056 (Pa.Super.1992) (noting that Pennsylvania courts have found the undefined term "professional services" to be ambiguous, and therefore, must be construed against the insurer); *Danyo v. Argonaut Ins. Companies*, 318 Pa.Super. 28, 464 A.2d 501, 502 (1983) (finding that where a policy does not define professional services, "there is much room for reasonable minds to differ in the interpretation of the term 'professional services' [and][i]n the face of this ambiguity, [the court] must again interpret the policy liberally in favor of the insured").

The Court concludes that there is a genuine issue of material fact as to whether Jonathan DeYoung was acting in his capacity as an attorney and rendered professional services. Because the term "professional services" is undefined in the policy, it is possible for reasonable minds to reach varying conclusions as to whether Jonathan DeYoung provided professional services to Hoisington. Therefore, summary judgment is not appropriate on this issue.

c. *Was DeYoung acting in a fiduciary capacity as stated in the policy?*

 Hoisington's final challenge to plaintiff's assertion that it has no duty to defend or indemnify against her claim is that DeYoung provided fiduciary services, and such services are covered by the policy. Hoisington relies on a contract provision which states that:

When the Insured renders or fails to render services as an administrator, conservator, receiver, executor, guardian, trustee, or *in any similar fiduciary capacity*, the Insured's acts and omissions in such capacity shall be deemed for the purpose of this section to be the performance of professional services for others in the Insured's capacity as a lawyer, provided that this coverage shall not apply to any loss sustained by the Insured as the beneficiary or distributee of any trust or estate.

Pl. Mot. for Summ. J., Ex. B (quoting Policy at 2) (emphasis added). Hoisington asserts that DeYoung's role in the attorney-client relationship is equivalent to acting in a fiduciary capacity. In response, plaintiff contends that DeYoung was not acting in any of the specified fiduciary categories, or similar fiduciary capacity, to which coverage applies, and that the mere existence of an attorney-client relationship over a span of time does not automatically mean that all conduct undertaken by the insured is conduct related to the insured's profession as a lawyer. Further, plaintiff contends that the alleged malpractice by Jonathan DeYoung was related to DeYoung's separate business as an investment advisor, rather than as a lawyer. As with the issue of professional services, whether Jonathan DeYoung was acting in a fiduciary capacity is a genuine issue of material fact that prevents the Court from granting plaintiff's motion for summary judgment as to Hoisington's claim against Jonathan DeYoung under the tail coverage.

## V. CONCLUSION

Upon consideration of plaintiff's motion for summary judgment and the responses thereto, the Court finds that plaintiff's motion shall be granted in part and denied in part, as follows:

(1) as to the claims of Morton Tirnauer and Thomas Sylk, summary judgment shall be granted because their claims against Jonathan DeYoung, Law Offices, DWN, Walfish, and Saulino under the last claims-made policy were first made after the expiration date of the policy;

(2) as to the claims of Michael Vagnoni, summary judgment shall be granted as to Vagnoni's claim against Jonathan DeYoung, Law Offices, DWN, Walfish, and Saulino under the last claims-made policy because his claim was first made after the expiration of the policy. Summary judgment shall be denied only as to Vagnoni's claim against Jonathan DeYoung under the tail coverage insurance because Vagnoni's lawsuit, although naming the incorrect defendant, qualifies as a claim under the tail coverage and was made within the relevant policy period; and (3) as to the claims of Elva Hoisington, summary judgment shall be granted as to Hoisington's claims against Jonathan DeYoung, Law Offices, DWN, Walfish, and Saulino under the claims-made policy because her claim was first made after the expiration of the policy. Summary judgment shall be denied only as to Hoisington's claim against Jonathan DeYoung under the tail coverage insurance because Hoisington's lawsuit, although naming the incorrect defendant, qualifies as a claim under the tail coverage and was made within the relevant policy period. Furthermore, there are genuinely disputed issues of material fact as to whether Jonathan DeYoung rendered professional services and acted in a fiduciary capacity so as to invoke plaintiff's duty to defend or indemnify.