University Health Services Inc. v.
Pennsylvania Property & Casualty Insurance
Guaranty Association

*Richard F. McMenamin,* for plaintiff.
*Lise Luborsky,* for defendant.

SHEPPARD JR., *J.,* May 5, 2004—Before the court are the cross-motions for summary judgment of Univer-

sity Health Services Inc. (UHS) (Control no. 021199) and Pennsylvania Property and Casualty Insurance Guaranty Association (PPCIGA) (Control no. 021195). For the reasons discussed, this court grants summary judgment in favor of UHS and against PPCIGA.

## BACKGROUND

This action arises as a result of the liquidation of PHICO Insurance Company. PHICO was declared insolvent and placed in liquidation by order of the Commonwealth Court on February 1, 2002. Am. compl., exhibit B (the liquidation order). The liquidation order triggered the obligations of PPCIGA to the extent provided under the Pennsylvania Property and Casualty Insurance Guaranty Association Act, 40 P.S. §§991.1801-991.1820 (the Guaranty Act). Prior to the liquidation, UHS was insured by PHICO under professional liability policy no. 10656 for claims related to UHS' operation of various medical facilities (the policy).

The policy at issue, which was a claims-made policy,[1] was initially issued on January 1, 1998, and remained in effect until January 1, 2002 (the policy period). At the time of purchase, UHS also purchased a "reporting tail option" of unlimited duration, which was to take effect when the

---

1. Under a "claims-made" policy, the claim must be made during the policy period in order to obtain coverage. Under an "occurrence" policy, the incident giving rise to liability must occur during the policy period, but need not be reported during the policy period itself. *Home Ins. Co. v. Law Offices of Jonathan DeYoung P.C.*, 32 F. Supp.2d 219 (E.D. Pa. 1998). This subject is discussed in greater detail, *infra* at p. 62.

policy expired on January 1, 2002.[2] The purpose of the reporting tail was to provide coverage after the policy expired for claims made relating to events that took place during the policy period. The reporting tail did not extend the policy period or the scope of coverage.

UHS received several claims based on events that took place during the policy period, but those claims were reported for the first time to UHS more than 30 days after the determination of insolvency (the reporting tail claims). PPCIGA has denied coverage on these claims, asserting that its obligations to provide coverage extended no further than to claims arising within 30 days after the determination of insolvency. As a result, PPCIGA maintains that its obligations had ended. UHS, on the other hand, contends that because of the reporting tail, there is no end date to PPCIGA's obligations under the policy and the Guaranty Act. In essence, UHS contends that the reporting tail converted the claims-made policy into an occurrence policy.[3]

---

2. It is undisputed that all premiums for the reporting tail were paid in full to PHICO before the expiration of the policy period.

3. By way of further background, UHS initially submitted its claims to the insurance commissioner acting in her role as the statutory liquidator of PHICO. The commissioner preliminarily determined that the reporting tail claims were not "covered claims" against PHICO in liquidation under the Insurance Department Act of 1940, 40 P.S. §201.221.63 (the Insurance Act) because the right to make reporting tail claims was allegedly cancelled by the liquidation order. After briefing and argument by UHS, the commissioner reversed her initial determination and issued a notice of claim determination that held that the reporting tail was not cancelled by the liquidation order and that the reporting tail claims should be covered claims under both the Insurance Act and the Guaranty Act. The commissioner reasoned that these statutes were intended to be read together to provide coverage

## DISCUSSION

PPCIGA is a statutory unincorporated association vested with remedial obligations in circumstances where licensed property and casualty insurers are deemed insolvent. 40 P.S. §991.1801; *Bell v. Slezak*, 571 Pa. 333, 812 A.2d 566 (2002). PPCIGA obtains funding to satisfy the obligations of insolvent insurers by collecting monies from all insurance companies that write property and casualty insurance in the Commonwealth. 40 P.S. §991.1808. Under the circumstances of PHICO's insolvency, PPCIGA would ordinarily assume payment of the insolvent insurer's obligations arising from claims made under the insurance policies of its insureds, subject to limitations embodied in the Guaranty Act. 40 P.S. §991.1803(b)(1).

Under the Guaranty Act, PPCIGA is "deemed the insurer to the extent of its obligation on the covered claims and, to such extent, shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent." 40 P.S. §991.1803(b)(2); see *e.g., Donegal Mutual Insurance Co. v. Long,* 528 Pa. 295, 300, 597 A.2d 1124, 1127 (1991); *Matusz v. Safeguard Mutual Insurance Co.,* 340 Pa. Super. 116, 119, 489 A.2d 868, 870 (1985). Thus, under the statutory scheme of the Guaranty Act, PPCIGA "steps into the shoes" of the in-

---

for such claims. Pl. mtn., exhibit 9. This determination was confirmed by the Commonwealth Court.

However, it is important to note that PPCIGA was not a party to the PHICO liquidation action. Also, the commissioner's determination, while instructive, is neither binding upon PPCIGA nor upon this court under principles of res judicata.

solvent insurer and, as a result, accepts legal defense obligations in connection with "covered claims" against insureds of insolvent insurers which arise under the policy in question. 40 P.S.§991.1803 (b)(3). Specifically, the Guaranty Act defines PPCIGA's "powers and duties" as follows:

"To be obligated to pay *covered claims existing prior to the determination of the insolvency,* arising within 30 days after the determination of insolvency or before the policy expiration if less than 30 days after the determination of insolvency or before the insured replaces the policy or causes its cancellation if he does so within 30 days of the determination . . . ." 40 P.S. §991.1803 (b)(1)(i). (emphasis added)

A "covered claim" is defined by the Guaranty Act as an "unpaid claim . . . submitted by a claimant, which arises out of and is within the coverage and is subject to the applicable limits of an insurance policy to which this article applies . . . ." 40 P.S. §991.1802.

This court finds that the reporting tail claims are "covered claims" as defined by the Guaranty Act in that they constituted unpaid claims submitted by UHS that arose out of and are within the coverage and subject to the applicable limits of the PHICO policy.[4] There is nothing

---

4. Section 991.1802 also requires that: "(1) the claimant or insured is a resident of this Commonwealth at the time of the insured event. Provided that for entities other than an individual, the residence of the claimant or the insured is the state in which its principal place of business is located at the time of the insured event; or (2) the property from which the claim arises is permanently located in this Commonwealth." 40 P.S. §991.1802. The satisfaction of this requirement has not been identified as an issue in this case.

in the record to suggest that such claims would not have been covered under the reporting tail of the policy if PHICO had not become insolvent. The issue then turns on whether the reporting tail claims "existed" prior to the determination of insolvency. Not surprisingly, the parties take opposite positions on the issue.

To make a decision, a basic understanding of the concepts relevant to the policies at issue is necessary. The policy was a claims-made policy which provided coverage only to claims arising from events which both occurred and were reported during the policy period. Def. exhibit 2; see also, *Home Insurance Co. v. Law Offices of Jonathan DeYoung P.C.,* 32 F. Supp.2d 219, 224 (E.D. Pa. 1998). As noted, UHS purchased unlimited tail coverage for its claims-made policy, which, by its own terms, provided coverage for claims made after the expiration of the policy period for events which occurred during the policy period. "Tail coverage provides insurance protection for acts, errors or omissions that occurred while the initial claims-made policy was in effect, so long as the claim is asserted before the expiration of the tail period." *Home Ins. Co.,* 32 F. Supp.2d at 224 (citing Couch On Insurance §102:26 (3d ed. 2000)). Thus, the reporting tail changes the nature of the claims-made policy and shifts the focus to when the event giving rise to liability took place, rather than when it was reported. In essence, the tail converts UHS' claims-made policy into an occurrence policy. See *e.g., Ballow v. PHICO Insurance Co.,* 875 P.2d 1354 (Colo. 1993); *Byrne v. Joilet Medical Group Ltd.,* 1992 WL 159178, *3 (N.D. Ill. 1992).[5]

---

5. Although not binding upon the court, these opinions are informative and the analyses helpful in resolving this issue.

Here, it is undisputed that the events giving rise to the reporting tail claims took place during the policy period (which was in effect from January 1, 1998 through January 1, 2002) and prior to PHICO's determination of insolvency (February 1, 2002). "Once the occurrence happens, liability insurance coverage attaches even though the claim may not be made for sometime thereafter." 20 Holmes' Appelman On Insurance §130.1 at 218-19 (2d ed. 2002). As such, this court finds that the reporting tail claims fall within the statutory language of the Guaranty Act as claims "existing prior to the determination of the insolvency . . . ." 40 P.S. §991.1803(b)(1)(i) and are therefore covered.

This determination is consistent with the intent of the Guaranty Act. Pursuant to the Statutory Construction Act, the court's purpose is to "ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. §1921(a). In doing so, the court may consider, inter alia, the "object to be attained" by the statue and the "consequences of a particular interpretation." 1 Pa.C.S. §1921(c)(4). Hence, in determining the issue of coverage here, one should not lose focus of the purpose behind the Guaranty Act, which includes providing "a means for the payment of covered claims under certain property and casualty insurance policies, to avoid excessive delay in the payment of such claims and to avoid financial loss to claimants or policyholders as a result of the insolvency of an insurer." 40 P.S. §991.1801. An insured who purchased coverage from and has a valid claim against an insolvent insurer should receive, at a minimum, the level of benefits provided by the state guaranty association. The only limitations placed upon an injured party are

the limitations as set forth in the Guaranty Act. Thus, by the clear and unambiguous terms of the Guaranty Act, PPCIGA is deemed to "stand in the shoes" of PHICO in the instant matter and is, therefore, obligated to provide coverage for the reporting tail claims, just as PHICO would have been so obligated but for its insolvency, subject to the limitations of the Guaranty Act.

## CONCLUSION

For these reasons, this court finds as follows:

(1) The motion of defendant Pennsylvania Property and Casualty Insurance Guaranty Association (Control no. 021195) is *denied;*

(2) The motion of plaintiff University Health Services (Control no. 021199) is *granted.* Specifically, it is the determination of this court that the reporting tail claims, as defined in the attached opinion, are covered claims under the Pennsylvania Property and Casualty Insurance Guaranty Association Act, 40 P.S. §§991.1801-991.1820, subject only to specific policy defenses that may be available under the terms of the PHICO policy in question and the limitations of the Guaranty Act itself; and

(3) PPCIGA is *ordered* to perform its obligations with respect to the defense and indemnity provisions as set forth in the PHICO policy and the Guaranty Act, subject to the available policy defenses, if applicable.

## ORDER

And now, May 5, 2004, upon consideration of the parties' cross-motions for summary judgment, the responses in opposition and the respective memoranda, oral argu-

ment, all other matters of record, and in accord with the opinion being filed contemporaneously, it is ordered that:

(1) The motion of defendant Pennsylvania Property and Casualty Insurance Guaranty Association (Control no. 021195) is denied;

(2) The motion of plaintiff University Health Services (Control no. 021199) is granted. Specifically, it is the determination of this court that the reporting tail claims, as defined in the attached opinion, are covered claims under the Pennsylvania Property and Casualty Insurance Guaranty Association Act, 40 P.S. §§991.1801-991.1820, subject only to specific policy defenses that may be available under the terms of the PHICO policy in question and the limitations of the Guaranty Act itself; and

(3) PPCIGA is ordered to perform its obligations with respect to the defense and indemnity provisions as set forth in the PHICO policy and the guaranty Act, subject to the available policy defenses, if applicable.