Justice ALBIN,
concurring in part and dissenting in part.
Lawyers operating as a limited liability partnership (LLP), pursuant to Rule 1:21-1C, are shielded from vicarious liability for the malpractice of their partners. The rule’s quid pro quo is that the LLP must carry adequate malpractice insurance “to protect consumers of legal services.” First Am. Title Ins. Co. v. Lawson, 177 N.J. 125, 139, 827 A.2d 230 (2003) (explaining relationship between liability shield and insurance requirement under Rule 1:21-1C).
I cannot agree with the majority’s holding that the law firm of Ward & Olivo, before its dissolution as an LLP, did not have an obligation to carry malpractice insurance pursuant to Rule 1:21-1C during the wind-up period, while it was still collecting client fees.[1] The majority’s conclusion means that an LLP, while winding up business, can collect fees from a client, but has no responsibility to maintain insurance to compensate that client for an earlier act of malpractice. In my view, even the most rigid *445 interpretation of Rule 1:21-1C does not compel such an inequitable result.
I concur with the majority that Rule 1:21-1 C, as currently written, does not provide the remedy of stripping the partners of the liability shield for their failure to maintain malpractice liability insurance. Although that remedy does not accord with the letter of the rule, it is in keeping with the spirit of the rule. Lawyers operating as an LLP should not expect that they can hide behind the liability shield while failing to maintain the required amount of malpractice insurance. Therefore, I would amend Rule L21-1C to make explicit that lawyers operating as an LLP will be treated as a general partnership if they fail to maintain malpractice insurance. Additionally, I would amend the rule to require that an LLP carry malpractice insurance for a six-year period after its dissolution, if such insurance is reasonably available. Tail coverage will ensure that the law firm’s last client has as much financial protection as the firm’s first client.[2]
I.
In a general partnership, each partner in a law firm is vicariously liable for the malpractice of every other partner. See N.J.S.A. 42:1A-I8(a). Thus, a client wronged by the malpractice of one partner can seek full satisfaction of a judgment from other partners. See ibid.
This Court adopted Rule 1:21-10 in 1996 to allow attorneys to practice law in a limited liability partnership, provided the partnership secured malpractice liability insurance in an amount of not less than $100,000 for each attorney employed by the LLP. R. 1:21-1C. The legal structure of an LLP shields one partner from *446 vicarious liability for the malpractice of another partner. See N.J.S.A. 42:1A-I8(c).
Rule l:21-lC(a)(3) provides that “[attorneys may engage in the practice of law as limited liability partnerships ... provided that” the LLP “shall obtain and maintain in good standing one or more policies of lawyers’ professional liability insurance.” The trade-off for the liability shield of Rule 1:21-1 C is that the attorneys operating as an LLP must maintain malpractice liability insurance. See First Am. Title, supra, 117 N.J. at 139, 827 A.2d 230. Thus, in exchange for protection from lawsuits premised on vicarious liability, partners must provide adequate financial security in the form of insurance for their clients. Common sense and public policy suggest that partners not be permitted to seek shelter behind the liability shield of an LLP when they have not maintained malpractice insurance. Rule 1:21-1C should provide a remedy equal to the violation of the mandatory malpractice insurance requirement.
The current rule has a limited set of sanctions for an LLP’s failure to maintain malpractice insurance: “Any violation of this rule by the limited liability partnership shall be grounds for the Supreme Court to terminate or suspend the limited liability partnership’s right to practice law or otherwise to discipline it.” R. l:21-lC(a)(2). It does not provide the remedy of rendering the partners jointly and severally liable for the LLP’s failure to maintain insurance. In this case, under the current rule, Ward is not jointly and severally liable for the malpractice of his partner, despite the fact that he and his partner continued to operate as an LLP, collecting fees from clients during the wind-up period, while not carrying claims-made legal malpractice insurance.[3]
*447 In the scenario sanctioned by the majority, partners in an LLP can collect fees from a client during the wind-up period and not maintain malpractice insurance without ever violating Rule 1:21-1C. Yet, if the same attorneys were operating as a general partnership — and not in the form of an LLP — they would be vicariously liable. See N.J.S.A. 42:1A-I8(a). The attorneys in this case should be in no better position than attorneys operating as a general partnership when they are sued for malpractice.
Other jurisdictions that permit attorneys to operate as an LLP conditioned on maintaining malpractice insurance provide a remedy commensurate with a breach of the insurance requirement. Colorado, Delaware, Illinois, Indiana, Massachusetts, Nebraska, Ohio, Oklahoma, and Washington explicitly state in their statutes or court rules that LLPs lose their liability shield when they fail to maintain adequate malpractice insurance. See Colo. R. Civ. P. 265(a)(2) (imposing joint and several liability on partners of LLP unless LLP has minimum amount of malpractice insurance); Del. Sup.Ct. R. 67(h)(ii)(l) (imposing joint and several liability for partners of LLPs if LLP does not maintain malpractice insurance); Rl. Sup.Ct. R. 722(b)(1) (stating that failure of LLP to maintain minimum insurance subjects partners to joint and several liability for rule’s minimum per claim amount, and to higher per claim amount if failure to maintain insurance is fraudulent or willful); Ind. Admission & Discipline R. 27(h) (imposing joint and several liability on partners if LLP “fails to have the professional liability insurance or other form of adequate financial responsibility required by” rule); Mass. Sup. Jud. Ct. R. 3:06(3)(c) (imposing joint and several liability on partners if LLP “fails to maintain insurance or a fund in the Designated Amount in compliance with this rule”); Neb. Sup.Ct. R. 3-201(C)(7)(b)(iv), (C)(7)(c) (stating that if LLP does not maintain professional liability insurance, partners “shall be jointly and severally liable to the extent that the assets of the organization are insufficient to satisfy any liability incurred by the corporation for” malpractice of its partners); Ohio Gov.Bar.R. 111(4) (imposing joint and several liability for partners of LLPs “to the extent that the firm fails to have the professional *448 liability insurance or other form of adequate financial responsibility required by this rule”); Okla. Stat. tit. 54, § 1-309 (stating that failure to comply with liability insurance requirement for LLP renders partners jointly liable); Wash. Rev.Code § 25.05.125 (stating that partners are personally liable if LLP fails to maintain “a policy of professional liability insurance ... or other evidence of financial responsibility ... to the extent that, had such insurance ... or other evidence of responsibility been maintained, it would have covered the liability in question”).
We should adopt the approach taken by those jurisdictions. We should amend Rule 1:21-10 to provide that lawyers who operate as an LLP and fail to maintain malpractice insurance lose their liability shield if their partners are sued for malpractice.
II.
As indicated earlier, attorneys operating as an LLP should maintain malpractice insurance during the windup of business. In addition, the rule should require that an LLP secure tail coverage for a reasonable period after the LLP’s dissolution, to give adequate financial protection to all the law firm’s clients, not just the first ones through the door.
Inevitably, there will be a time lag between an act of legal malpractice, its discovery by a client, and the filing of a lawsuit. Under a claims-made policy, as in the case before us, insurance coverage is available only if the law firm has insurance in the year that the claim is filed. So, for example, if lawyers operating as an LLP represent clients from January 1 through June 30 and dissolve the LLP on July 1 without securing tail coverage, the liability shield will be in place and those clients with valid claims after July 1 will not have the financial security of insurance coverage.
In California, attorneys operating as an LLP must maintain insurance coverage during the wind-up period and for a minimum of three years after the LLP’s dissolution. Cal. Corp.Code § 16956(a)(1)(A) (“Upon the dissolution and winding up of the *449 partnership, the partnership shall” maintain a policy of liability insurance “for a minimum of three years if reasonably available from the insurer”). The California approach is sensible because it protects clients whose claims come to light after the LLP is no longer a going concern. A new rule can mirror the California statute to include an exception for cases in which liability insurance is not reasonably available.
The statute of limitations for the filing of legal malpractice claims in New Jersey is six years. N.J.S.A 2A:14-1; McGrogan v. Till, 167 N.J. 414, 420, 771 A.2d 1187 (2001). The purpose of Rule L21-1C is to ensure that attorneys practicing as an LLP have insurance coverage to provide clients wronged by malpractice a remedy. Thus, this Court should require lawyers engaging in the practice of law as an LLP to secure tail coverage for six years after the LLP’s dissolution, if such coverage is reasonably available. This tail-coverage period will provide equality of coverage for the firm’s first and last clients. To that end, mandating six years of tail coverage will protect clients whose malpractice claims have not come to light before attorneys dissolve their LLPs.
Because we cannot protect those clients whose malpractice claims may arise six years after an LLP’s dissolution is no reason not to protect those clients who file claims within a reasonable period after the dissolution. I do not accept the majority’s position that because we cannot protect everyone, we should protect no one.
If a law firm can secure an occurrence policy, then tail coverage is unnecessary because clients will have insurance coverage for any act of malpractice committed during the life of the LLP.[4] Those lawyers unwilling to make the financial commitment to provide adequate insurance coverage for clients during the exis- *450 tenee of the LLP, or during a wind-up period, or for a reasonable period after the LLP’s dissolution can always practice in a general partnership. They should not, however, have the benefit of the LLP’s liability shield if the quid pro quo of insurance coverage is not honored.
III.
The New Jersey Constitution vests this Court with rulemaking authority over practice and procedure in our courts and the manner in which lawyers may practice law in this State. See N.J. Const, art. VI, § 2, ¶3. Pursuant to that authority, this Court adopted the current version of Rule L21-1C. This case has illuminated deficiencies in the rule that place clients and the public at risk. This Court therefore should exercise its constitutional authority and amend the current rule. Lawyers practicing in LLPs should no longer be able to invoke the liability shield of an LLP if they have not maintained adequate malpractice liability insurance during the life of the LLP and for a six-year period after its dissolution. In the event of non-compliance, the lawyers should be treated as though they were practicing in a general partnership and be subject to vicarious liability in cases of legal malpractice.
I concur in the judgment of the majority. However, I dissent from the majority’s conclusion that an LLP does not have to maintain liability insurance during the LLP’s wind-up period. I also would amend Rule 1:21-1C to require lawyers engaging in the practice of law as an LLP to secure tail coverage for a six-year period after the LLP’s dissolution, if such coverage is reasonably available.

 “Winding up” is "[t]he process of settling accounts and liquidating assets in anticipation of a partnership's or a corporation's dissolution." Black's Law Dictionary 1835 (10th ed.2014).

 "Tail coverage, also referred to as an extended reporting period, extends the time within which a claim may be made after the cancellation or expiration of a particular claims-made policy." Home Ins. Co. v. Law Offices of Jonathan DeYoung, P.C., 32 F.Supp.2d 219, 224 (E.D.Pa.1998).

 Under a claims-made policy, the policyholder is protected "if the negligent or omitted act is discovered and brought to the attention of the insurance company during the period of the policy.” Zuckerman v. Nat’l Union Fire Ins. Co., 100 N.J. 304, 310, 495 A.2d 395 (1985) (quoting Samuel N. Zarpas, Inc. v. Morrow, 215 F.Supp. 887, 888 (D.N.J.1963)).

 Under an occurrence policy, attorney malpractice would be the occurrence that is insured. See Templo Fuente De Vida Corp. v. Nat’l Union Fire Ins. Co., 224 N.J. 189, 201, 129 A.3d 1069 (2016). Under such a policy, so long as the act of malpractice occurred during the life of the policy, coverage attaches. Ibid.